IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CONSTANCE MADDEN, on behalf of J.M., | ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | NO. 3:20-cv-00291-SRW |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiff Constance Madden, on behalf of her minor son J.M., commenced this action on April 30, 2020, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying J.M.'s application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"). *See* Doc. 1. Plaintiff filed J.M.'s application on January 27, 2017, alleging that he became disabled on November 28, 2005. (Tr. 10, 93-94 ).[2, 3] J.M.'s application was denied at the initial

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to the transcript pages are denoted by the abbreviation "Tr."

[3] Although Plaintiff alleges that J.M.'s disability commenced at the time of his birth, "[p]ayment of [SSI] benefits may not be made for any period that precedes the first month following the date on which the application is filed . . . ." 20 C.F.R. § 416.501; *see also* 20 C.F.R. § 416.335 ("If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month."). Thus, the relevant period for Plaintiff's disability claim began on January 27, 2017, when Plaintiff filed J.M.'s application. *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir.

administrative level. (Tr. 10, 93-107). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), at which Plaintiff and J.M. appeared with an attorney. (Tr. 10, 75-91). On April 17, 2019, the ALJ issued an unfavorable decision. (Tr. 10-25). Plaintiff appealed that decision, and the Appeals Council denied Plaintiff's request for review on March 6, 2020. (Tr. 1-5). The ALJ's decision therefore became the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and award benefits or, in the alterative, to remand this cause to the Commissioner for a new hearing and further consideration under sentence four of 42 U.S.C. § 405(g). *See* Docs. 1, at 1-2; 10, at 11. The case is ripe for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 14,15. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED.

## II.   STANDARD OF REVIEW AND REGULATORY FRAMEWORK

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial

---

2015) ("For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file."); *Russell v. Astrue*, 742 F. Supp. 2d 1355, 1358 n.2 (N.D. Ga. 2010).

evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.   . . .   No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted and bracketed material added).

For an individual under the age of 18 to be entitled to SSI benefits, that person must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).[4] To make a disability determination, the Commissioner employs a three-step, sequential evaluation process. *See* 20 C.F.R. § 416.924(a). "First, the ALJ determines whether the claimant is engaged in substantial gainful activity. If not . . . the ALJ determines whether the claimant has a severe impairment or combination of impairments." *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 645 (11th Cir. 2012) (citing 20 C.F.R. §§ 416.924(b), (c)). If the ALJ determines

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

3

that the claimant has a severe impairment, then the ALJ must determine "whether the impairment or combination of impairments meets or is medically or functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfies the duration requirement." *Id*.; 20 C.F.R. § 416.924(d).

"In determining whether a child's impairment functionally equals a listed impairment, the ALJ must consider six 'domains,' which are 'broad areas of functioning intended to capture all of what a child can and cannot do.'" *Id*. (citing 20 C.F.R. § 416.926a(b)(1)). "These domains are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The ALJ must assess the claimant's functioning in terms of six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." *Id*. In making this assessment, the ALJ must "look at how appropriately, effectively, and independently [the claimant] performs [his or her] activities compared to the performance of other children [the claimant's] age who do not have impairments." 20 C.F.R. § 416.926a(b).

"To satisfy the 'functional equivalent' standard, a child claimant must have 'marked' limitations in two domains or an 'extreme' limitation in one domain." *Bryant*, 478 F. App'x at 645-46 (citing 20 C.F.R. § 416.926a(d)). A child claimant has a "marked limitation" in a domain when the claimant's "impairment(s) interferes seriously with [the] ability to independently initiate, sustain, or complete activities," and a "'[m]arked' limitation also means a limitation that is 'more than moderate' but "less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i). An "extreme limitation" is defined as an impairment that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities," and "is 'more than marked.'" 20 C.F.R. § 416.926a(e)(3)(i). In assessing whether the claimant has "marked" or "extreme" limitations, the

ALJ must consider the "interactive" and "cumulative" effects of all medically determinable impairments, including those impairments that are not severe. 20 C.F.R. § 416.926a(a), (c), (e).

## III.   ADMINISTRATIVE PROCEEDINGS

J.M. was 11 at the time of his application for benefits and 13 years old at the time of the ALJ's decision. (Tr. 13, 25, 77, 93-94). J.M. is a resident of Opelika, Alabama, and lives with his mother and three siblings. (Tr. 62, 77-78, 407). J.M. is in the sixth grade. (Tr. 78). Plaintiff claims that J.M. is disabled on the bases of attention deficit hyperactive disorder ("ADHD"), bipolar disorder, and learning disability. (Tr. 94).

Following the administrative hearing, at which Plaintiff testified, and employing the three-step process, the ALJ made the following enumerated findings:

1.    The claimant was born on November 28, 2005. Therefore, he was a school-age child on January 27, 2017, the date [the] application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2.    The claimant has not engaged in substantial gainful activity since January 27, 2017, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: asthma, borderline intellectual functioning, attention deficit hyperactive disorder (ADHD), intermittent explosive disorder, adjustment disorder, and personality disorder (20 CFR 416.924(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.    The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6.    The claimant has not been disabled, as defined in the Social Security Act, since January 27, 2017, the date the application was filed (20 CFR 416.924(a)).

(Tr. 13, 14, 24).

IV.    **ISSUES ON APPEAL**

Plaintiff raises two issues on appeal, arguing that the ALJ erred by finding that J.M.'s impairments do not meet or medically equal Medical Listing 112.08 and/or 112.11, and that J.M. does not have an impairment or combination of impairments that functionally equal the severity of a Medical Listing. (Doc. 10, at 2). The Commissioner maintains that substantial evidence supports the ALJ's determinations regarding the listings, as well as the functional equivalence domains, and that deference is due to the ALJ's findings. (Doc. 12, at 1).

V.    **DISCUSSION**

A.    **Whether Impairments Meet Medical Listings 112.08 and 112.11**

Plaintiff argues that the evidence in the record from the relevant period satisfies the requirements of Listing 112.08 and/or 112.11 and that the ALJ's decision at step three fails to discuss any of the medical evidence or other evidence in the record. (Doc. 10, at 3, 6). Specifically, Plaintiff argues that J.M. has been diagnosed with a personality disorder and intermittent explosive disorder, which are sufficient to satisfy the diagnostic criteria of Listing 112.08, and that J.M. provided evidence satisfying the "A" criteria of Listing 112.08 by showing: (1) detachment from social relationships; (2) instability of interpersonal relationships; (3) excessive emotionality and attention seeking; (4) an excessive need to be taken care of; and/or (5) recurrent, impulsive, aggressive behavior outbursts. *Id*. at 4. Plaintiff maintains that J.M. satisfied the "B" criteria of Listings 112.08 and 112.11 by showing that he has the following: (1) marked limitations in concentration, persistence, or pace; (2) marked limitations interacting with others due to detachments from relationships or instability of relationships with his peers; and (3) marked limitations in adapting and caring for himself. *Id*. at 4-5. Plaintiff additionally argues that J.M. has a neurodevelopmental disorder, as he has been diagnosed with severe medically determinable

borderline intellectual functioning, which meets the introductory requirements of Listing 112.11, and that J.M. satisfied the "A" criteria of Listing 112.11 through evidence showing one or more of the following: (1) frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; (2) hyperactive and impulsive behavior; and (3) significant difficulties learning and using academic skills. *Id*. at 5-6.

The Commissioner contends that the ALJ specifically considered Listings 112.08 and 112.11 and properly found that J.M.'s impairments do not meet or medically equal the criteria of either listing, and that in making this determination, the ALJ was not required to provide any further explanation beyond this finding. (Doc. 12, at 6-7). The Commissioner concedes that the paragraph A criteria of Listings 112.08 and 112.11 have been met and that the ALJ's finding that J.M. had marked limitation in the functional equivalence domain of attending and completing tasks equates to a finding that J.M. had marked limitation in concentration, persistence, or pace. *Id*. at 7-8. However, the Commissioner argues that substantial evidence supports the ALJ's finding, as reflected in the functional equivalence analysis, that J.M. did not have marked limitation in two, or extreme limitation in one, of the listed mental functioning areas when compared to children of the same age, and, thus, J.M. failed to fulfil the paragraph "B" criteria for both listings. *Id*. at 7. Specifically, the Commissioner contends that the ALJ's discussion of the medical evidence regarding the areas of interacting and relating with others and adapting or managing oneself is especially thorough and that this discussion is consistent with and supports the finding that J.M. had less than marked limitation in these areas. *Id*. at 9.

Listings 112.08 (personality and impulse-control disorders) and 112.11 (neurodevelopmental disorders) pertain to mental disorders and apply to children from age three to attainment of age 18. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 112.00. These listings have two paragraphs, designated "A" and "B", and a claimant's mental disorder must satisfy the

7

requirements of both paragraphs "A" and "B." *Id*. Paragraph "B" criteria are the same for both

listings. Medical Listing 112.08 provides the following requirements:

A.  Medical documentation of a pervasive pattern of one or more of the following:

1. Distrust and suspiciousness of others;
2. Detachment from social relationships;
3. Disregard for and violation of the rights of others;
4. Instability of interpersonal relationships;
5. Excessive emotionality and attention seeking;
6. Feelings of inadequacy;
7. Excessive need to be taken care of;
8. Preoccupation with perfectionism and orderliness; or
9. Recurrent, impulsive, aggressive behavioral outbursts.

AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas
    of mental functioning (see 112.00F):

1. Understand, remember, or apply information (see 112.00E1).
2. Interact with others (see 112.00E2).
3. Concentrate, persist, or maintain pace (see 112.00E3).
4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 112.08.

Medical Listing 112.11 requires the following:

A.  Medical documentation of the requirements of paragraph 1, 2, or 3:

1. One or both of the following:
a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing
   tasks; or
b. Hyperactive and impulsive behavior (for example, difficulty remaining seated,
   talking excessively, difficulty waiting, appearing restless, or behaving as if
   being "driven by a motor").
2. Significant difficulties learning and using academic skills; or
3. Recurrent motor movement or vocalization.

AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas
    of mental functioning (see 112.00F):

1. Understand, remember, or apply information (see 112.00E1).
2. Interact with others (see 112.00E2).

     3. Concentrate, persist, or maintain pace (see 112.00E3).
     4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 112.11.

     Interacting with others "refers to the abilities to relate to others age-appropriately at home, at school, and in the community." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(2). Examples of this domain include the following:

> Engaging in interactive play; cooperating with others; asking for help when needed; initiating and maintaining friendships; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

*Id*.

     As to "interacting and relating to others,"[5] the ALJ concluded that J.M. had "less than marked limitation in interacting and relating with others." (Tr. 21). The ALJ found that January 2017 examination notes showed that J.M. was doing well in school and that he was able to have one or more close friends. (Tr. 16, 21, 279). A May 26, 2017 consultative examination by Lee Stutts, Ph. D, revealed that J.M. was calm and not hyperactive; his mood and affect were within normal limits; his thought processes were logical and coherent; his memory, judgment, and insight were intact per IQ range and developmental level; he demonstrated a fund of knowledge by correctly answering questions including date of birth and age; and although he had some difficulty with abstraction, he demonstrated good judgment. (Tr. 16-17, 407). The ALJ noted that Dr. Stutts determined that J.M. appeared mildly impaired overall. (Tr. 17, 408). The ALJ also noted that state

---

[5] The mental functioning area of "interacting with others" is essentially the same as the functional equivalence domain of "interacting and relating with others." *See Delores J., o/b/o Q.J.J. v. Saul*, No. 18-cv-1104, 2019 WL 3891088, at *9 (D. Minn. Aug. 19, 2019) (noting the similarities between the functional domains for meeting a listing and the functional domains for functionally equaling the listings, "The determination of whether the claimant's impairments met or medically equaled Listing 112.11 or of whether the claimant's impairments were functionally equivalent to Listing 112.11 involves consideration of essentially the same record evidence.").

agency physicians, Samuel D. Williams, M.D., and Robert Heilpern, M.D., determined that J.M. had a less than marked limitation in interacting and relating with others. (Tr. 17, 101, 103). Additionally, the ALJ noted that J.M.'s October 2017 increase in Adderall was helpful in school, as none of J.M.'s teachers reported any behavior problems since the increase, and J.M. was able to focus better on the higher dosage. (Tr. 16, 17, 553, 559). Further, the ALJ found that J.M.'s IEP for the 2018-2019 school year provided that J.M. would work hard for his teachers when he was in a small group setting. (Tr. 21, 230).

To refute the ALJ's findings and show that "J.M. has at least marked limitations interacting with others due to detachments from relationships or instability of relationships with his peers," (Doc. 10, at 4), Plaintiff cites her testimony that J.M. has problems getting along with other children his age (Tr. 83-84). Plaintiff also cites to progress notes, dated January 27, 2017, May 11, 2017, and October 2, 2017, chronicling Plaintiff's concerns regarding J.M.'s behaviors and his getting along socially with children his age. (Tr. 383, 506, 544-45).

However, based upon the record as a whole, the court concludes that the ALJ's decision as to "interacting with others" is supported by substantial evidence. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d at 1158 ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence"); *Edwards*, 937 F.2d at 584 n.3 ("Under th[e] [substantial evidence] standard, [a reviewing court] do[es] not reverse the Secretary even if th[e] court, sitting as a finder of fact, would have reached a contrary result."); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (citation omitted).

10

"Adapt or manage oneself" "refers to the abilities to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(4). Examples of this domain include the following: "[r]esponding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable performance in community- or school-related activities; setting goals; making plans independently of others; maintaining personal hygiene; and protecting yourself from harm and exploitation by others." *Id*.

As to "adapting or managing oneself," the ALJ concluded that J.M. had "less than marked limitation in the ability to care for himself." (Tr. 23). As stated previously, Dr. Stutts determined that J.M. appeared mildly impaired overall. (Tr. 17, 408). The ALJ considered the fact that Plaintiff stated during the May 2017 consultative examination that J.M. performed his own activities of daily living with her supervision and took out the trash and cleaned his room. (Tr. 16, 23, 407). Also, the record reflects that Dr. Williams and Dr. Heilpern both determined that J.M. had no limitations in caring for himself. (Tr. 17, 102, 103). Additionally, the ALJ noted that J.M.'s increased dosage of Adderall helped him focus better. (Tr. 16, 17, 553, 559). The ALJ also considered the fact that in the function report, J.M.'s grandmother noted that J.M. had some difficulty taking care of his personal needs, and that Plaintiff testified at the hearing that she must remind J.M. to perform some personal care activities. (Tr. 15, 23, 85, 173). However, the ALJ determined that, on balance, J.M. had a less than marked limitation in the ability to care for himself. (Tr. 23).

Plaintiff contends that the ALJ did not consider other evidence in the record in making the determination concerning this domain. (Doc. 10, at 5). Plaintiff argues that the record documents the fact that J.M. was seen for treatment regarding attempts to improve his adaptation and that he had issues caring for himself because of immaturity for his age. *Id*. (citing Tr. 82, 85, 451, 455,

457, 458, 460, 463, 465, and 545). Plaintiff does not discuss the pertinent facts associated with the cited pages, but merely relies on the cited pages without any analysis. The cited pages consist of Plaintiff's testimony that J.M. has had issues with using the stove and microwave and needing reminders of personal care activities. (Tr. 82, 85). Plaintiff also cites to progress notes from East Alabama Mental Health Center, dated from September 18, 2017 to November 6, 2017, stating the goal as "increase adaptive behavior." (Tr. 451, 455, 457, 458, 460, 463, 465). One document indicated that the case manager discussed J.M.'s "behavior issues at school" with his mother. (Tr. 451). Several of the cited documents pertain to missed appointments, (Tr. 455, 457, 458), and in other documents, Plaintiff stated that J.M. was "doing well currently" (Tr. 460), that J.M. was doing about the same with no major issues (Tr. 463, 465), and that J.M. reported that "school [was] going ok" (Tr. 465). The last document, dated October 2, 2017 from Alabama Psychiatry, notes that Plaintiff reported that J.M. must be given extensive instructions on how to do things. (Tr. 545).

The ALJ is not required to cite and address every piece of evidence as long as the ALJ's decision demonstrates to the reviewing court that the ALJ considered the claimant's medical condition as a whole. *Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498 n.3 (11th Cir. 2021) and *Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 654 (11th Cir. 2020). Here, the court thoroughly discussed the evidence in the whole record, and, thus, based upon an examination of the record, the court concludes that the ALJ's decision as to "adapting and managing oneself" is supported by substantial evidence. *See Crawford*, 363 F.3d at 1158; *Edwards*, 937 F.2d at 584 n.3; *Ulman*, 693 F.3d at 714.

### B.   Whether J.M.'s Impairments Functionally Equal a Medical Listing

Plaintiff contends that in addition to the "attending and completing tasks domain," where the ALJ found marked limitation, J.M. also had marked limitation in the "acquiring and using information," "interacting and relating with others," and "caring for yourself" domains. (Doc. 10,

12

at 7- 10). In response, the Commissioner argues that the question is not whether evidence supports Plaintiff's argument, but rather, whether substantial evidence supports the ALJ's determination. The Commissioner contends that, here, the ALJ's thorough discussion of the medical evidence supports the finding of "less than marked" in the domains that Plaintiff contests. (Doc. 12, at 12).

As to the domains of "interacting and relating with others" and "caring for yourself,"[6] for the reasons previously discussed, the court finds that the ALJ thoroughly discussed the medical and other evidence of record in concluding that J.M. had "less than marked limitation" in these domains. With regard to the "acquiring and using information" domain, the ALJ considered the entire record and properly concluded that J.M. had "less than marked limitation in acquiring and using information." (Tr. 19). The ALJ found the following:

> The claimant also has a history of ADHD, developmental delays, and behavioral issues. Physician notes indicate that the claimant exhibits hyperactivity, mood disturbances, and anger outbursts (Exhibits B3F/25, 37; B11F75; and B13F/2-3). In the teacher questionnaire completed by the claimant's 4th grade teacher, she noted that the claimant has a very serious problem acquiring and using information, as he receives special education services and needs much support to complete assignments (Exhibit B7F/5). When he was reevaluated for special education services in May 2017, notes indicate that the claimant continues to struggle with reading fluency and comprehension, as well as solving addition and subtraction problems with regrouping and borrowing (Exhibit B4E/4). Nevertheless, the claimant's IEP for the 2018-2019 school year provides that he will work hard for his teachers when he is in a small group setting. He is able to read text on a 4th-5th grade level with few errors. The claimant likes math. He is able to add and subtract large numbers when he takes his time and knows most of his multiplication facts. He has a good understand of geometry (Exhibit B11E/2). Therefore, I find that the claimant has a less than marked limitation in acquiring and using information.

(Tr. 19, 190, 230, 291, 303, 400, 500, 544-45).

Additionally, the ALJ found that January 2017 examination notes showed that J.M. was doing well in school, (Tr. 16, 21, 279); Dr. Stutts's May 2017 examination, cited by ALJ, stated that J.M. made As and Bs his fourth-grade year, (Tr. 16, 17, 23, 407); Dr. Stutts offered the opinion

---

[6] The mental functioning area of "adapt or manage oneself" is similar to the functional equivalence domain of "caring for yourself." *See Delores J., o/b/o Q.J.J.*, 2019WL 3891088, at *9.

that J.M. appeared only "mildly impaired overall but perhaps moderately for academic tasks," (Tr. 17, 408); and Drs. Williams and Heilpern determined that J.M. had "less than marked" limitation in the "acquiring and using information" domain. (Tr. 17, 100-01, 103).

Plaintiff argues that the ALJ improperly disregarded J.M.'s fourth grade teacher's questionnaire, which indicated that J.M. had "serious" and "very serious" problems with acquiring and using information, as the claimant required special education services and "much support" to complete school assignments. (Doc. 10, at 7-10 (citing Tr. 400)). However, the ALJ's decision discussed this teacher questionnaire several times. (Tr. 15, 19). The ALJ, as the trier of fact, has a duty to weigh and resolve any conflicts in the evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). As recounted above, the ALJ considered and discussed the teacher's questionnaire, and weighed that questionnaire against the other evidence in the record (Tr. 15-23), including J.M.'s 2018-2019 IEP, which indicated that he could read at a fourth to fifth grade level with few errors, add and subtract large numbers, and perform geometry with good understanding (Tr. 19, 230), in addition to the opinion evidence of Stutts, Williams, and Heilpern (Tr. 16, 17, 23, 100-03, 407-08). "To the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181-JLB-MRM, 2021 WL 3023679, at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181-JLB-MRM, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) ("The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.") (citing *Crawford*, 363 F.3d at 1158-59).

Accordingly, based upon its review of the whole record, the court concludes that the ALJ properly considered the entire record in determining that Plaintiff's impairments did not functionally equal the listings, and that the ALJ's determination is supported by substantial evidence.

## VI.    CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision is due to be AFFIRMED.  A separate judgment will issue.

DONE, on this the 10th day of November, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge

15